# GRIFFIN v. STATE.

No. A-11005.   Dec. 7, 1949.

(210 P. 2d 671.)

Irvine E. Ungerman, and Charles A. Whitebook, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

PER CURIAM. The defendant, Fred Griffin, was charged by information filed in the court of common pleas of Tulsa county with the unlawful possession of 24 pints and 12 four-fifths of a gallon of whisky, was tried, convicted and sentenced to serve 30 days in the county jail and pay a fine of $50, and costs, and has appealed.

The first assignment of error relied on for a reversal of the judgment is that the court erred in overruling the motion of defendant to suppress the evidence offered on the part of the state. It is contended that the evidence obtained by means of the search of defendant's person and automobile was illegally obtained for the reason that the officers had no search warrant duly and legally issued and that the search was made without authority, was illegal and in violation of the constitutional guaranties of the defendant.

At the hearing on motion to suppress evidence, Roy Rains and Charles Page Campbell, the two arresting officers, testified, and the defendant Griffin testified.

Deputy Sheriff Roy Rains testified that he and Deputy Charles Page Campbell were in Campbell's jeep, near the courthouse in Tulsa, at about 6 p. m., June 17, 1947, and saw Dale Wolfe pass, and followed him "to see if he was going to a place to get some whisky. Any place. We did not know where he would go or what he would do."

They followed him several blocks, and he stopped, and the officers stopped about a block behind him to watch him. He only stopped about two minutes, and drove on. Wolfe stopped at Fifteenth and Yale streets and parked his car, and the officers stopped where they had the car in view. Dale Wolfe didn't know they were following him. Defendant Griffin passed at a high rate of speed and Officer Rains recognized him. Defendant slowed almost to a stop at Wolfe's car, and then both proceeded east on Fifteenth Street to the next street, which was Allegheny, turned around the corner to the north, and both of them parked in the middle of the street, from 30 to 50 feet from the corner. The officers followed at high speed and the jeep was brought to such a sudden stop in about eight to ten feet to the rear of the two cars that Officer Rains fell out. Rains testified that when they turned the corner the two men were out of the cars and between them, and "Little Griff" had a box which he handed to Wolfe and Wolfe went towards his car with it, and put it in his car, and that he, Rains, was close enough that he read the words "Distillery" and "Whiskey" on the card-board box.

Rains further testified that he did not see any transaction between the defendant and Dale Wolfe until he turned the corner north on Allegheny street; that "this transaction took place before I had fallen to the ground and took place during the time after we turned the corner. Mr. Campbell slowed down for the corner. He took it on two wheels and when we straightened up, I saw this transaction take place."

Rains was asked:

"Q. You saw the entire transfer of this case of whisky you say was made from one car to the other in the time your car traveled 50 feet? A. A very short space

of time because they did not take long to do it. Q. And you saw that done in such a time you were able to read from the sign on the box? Is that correct? A. I could see the word 'Whisky' on the box."

He further testified that he did not see any whisky bottles, that the card-board box was sealed, and that after the arrest they found a second card-board box of liquor in the defendant's car.

The testimony of Deputy Campbell was not very pertinent. He testified that as he and Rains were leaving the courthouse, Rains said: "There is a car we raided the other day and got a lot of whisky out of. Let's go and see what he is going to do." That was at the time Wolfe passed them. He corroborated Rains about following Wolfe, he did not know Wolfe or the defendant, and didn't see the words "Whiskey" or "Distillery" on the box,—he was too busy driving the jeep.

Defendant Griffin testified that just as he had placed the case of whisky in Dale Wolfe's car and was waiting for his money, the jeep came around the corner; that he placed the box in the car, over the steering wheel, himself, and that Wolfe did not have it in his hand; that Wolfe never touched the box, and that the officers could not have seen the box or the wording printed on it; that we was standing between his car and Wolfe's waiting for his money when he heard a commotion as the jeep turned the corner and that he stepped in his car to get out of the way and looked out of his window and saw Rains picking himself up off the gravelled road and that he had blood on his face and he handed Rains his handkerchief because he thought he was more seriously hurt than he was.

On trial, Rains testified practically the same as on the hearing of the motion to suppress. No one else tes-

tified. Demurrer to the evidence was overruled, and motion to strike was overruled.

In considering the assignment of error to the effect that the "court erred in not sustaining the defendant's motion to suppress the evidence," we must determine if there is competent evidence in the record reasonably tending to support the findings of the trial court, and if so this court will not reverse the lower court upon its findings of fact in connection with a motion to suppress the evidence. See Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99.

This court is further bound by the rule announced in numerous cases that whether a search of or seizure from an automobile, parked on a public street, without a warrant, is or is not unreasonable within the meaning of the constitutional provision (Okla. Const. Art. 2, § 30) forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made. See: Sue Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Blair v. State, 75 Okla. Cr. 265, 130 P. 2d 545.

On hearing the defendant frankly admitted that he was transporting whisky and that the whisky in question was his and he was making a sale to Dale Wolfe, and therefore that he was actually violating the law at the time of his arrest, but he seeks to avoid liability under the constitutional provisions heretofore referred to.

Deputy Sheriff Roy Rains testified that he first determined to search the defendant and his automobile as he rounded the corner of Fifteenth and Allegheny streets, and saw the defendant transferring the sealed carton with the words whisky and the name of the distillery on it.

The officers were patrolling the streets of Tulsa in the performance of their duty. It also was a part of their official duty to keep under surveillance the acts of any known criminals or suspicious characters. Both the defendant, Griffin, and Dale Wolfe, were known bootleggers. However, even though they were known bootleggers, the officers would not have a right to search their automobile without a warrant, unless a crime was committed in their presence which would authorize a search of the car.

The question presented to this court is whether the fact that the officers saw two known whisky dealers passing a sealed carton from one to the other with the distillery name together with the word "whisky" stamped thereon, was a violation of the prohibitory liquor laws in the presence of the officers, so as to justify the arrest of the defendant, and the search of his automobile, and seizure of the whisky in question.

In Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716, it is held:

"Where officer sees a person violating the intoxicating liquor law at a place where the officer has a legal right to be, the officer may without a warrant arrest the person and search his person and immediate possessions for intoxicating liquor."

Our Constitution, art 2, sec. 30, prohibits only "unreasonable searches and seizures".

In Davenport v. State, 71 Okla. Cr. 91, 108 P. 2d 549, the defendant drove his automobile into a public parking place. He left the car and went across the street to a restaurant. Certain policemen who had seen him drive into the parking lot went to the automobile, looked through a glass window into the car and saw several packages wrapped in brown paper. No whisky was vis-

ible, but on each of the packages were written the initials of the kind of liquor each contained, such as J. E. P. for James E. Pepper, etc. The officers recognized the packages as being lugs of whisky, although no bottles of whisky were in view. The search and seizure was sustained on the ground that a crime was committed in the presence of the officers, which authorized arrest of defendant and search of his automobile.

In Matthews v. State, 67 Okla. Cr. 203, 92 P. 2d 549, certain policemen of Enid were following the custom of checking the cars left on the streets of Enid at night to see whether they were locked, or had articles of value that might be stolen. The officers saw a carton on the floor of the car labeled "Paul Jones Whisky", and two or three other cartons beside it, and a bottle in the car. This court stated:

"In the case at bar, the undisputed facts and circumstances as testified to by the officers, were sufficient to warrant them in believing that intoxicating liquor was in the cartons and bottle laying on the floor of the automobile, and this was a sufficient showing of an offense committed in the presence of the officers, and the defendant admitted, while their investigation was in progress, that the trunk on the car contained whisky that belonged to him. The admissions against interest made by the defendant were conclusive as to his guilt of the offense charged."

In Young v. State, 71 Okla. Cr. 112, 108 P. 2d 1028, the defendant had stopped his automobile in a line of traffic behind a truck which was stuck in a snow bank. Some deputy sheriffs were driving on the highway and stopped their car in the line of traffic, got out to assist in pushing the truck, and, as they passed the car of defendant, they saw a number of packages of whisky wrapped in brown paper laying in the car. No bottles were

in sight, but the officers recognized the packages as being lugs of whisky. The law is stated in the syllabus as follows:

"Where one is transporting large quantities of intoxicating liquor upon the public highway, and an officer in the lawful discharge of his duty observes through the window of the car the intoxicating liquor upon the seat and floor of said car, it is not necessary to procure a search warrant before arresting defendant and searching the automobile, for the reason that a crime is being committed in his presence. Oklahoma Statutes 1931, § 2780, O.S.A., title 22, § 196."

See, also, Franklin v. State, 71 Okla. Cr. 115, 109 P. 2d 239, and Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366.

Lawson v. State, 84 Okla. Cr. 396, 182 P. 2d 786, and Washington v. State, 60 Okla. Cr. 316, 64 P. 2d 926, which are relied upon by defendant to sustain his position, are not in point because of different factual situation.

The fact that in the instant case the whisky was in the manufacturer's carton which was sealed and unbroken, and had thereon the name whisky with the stamp of the distillery, creates a presumption that the carton contained the product named on its side.

Laws have been enacted for the very purpose of preventing and punishing the misbranding of articles of merchandise in packages, including liquor. (Title 78 O. S. 1941.) It is an established custom relied upon in every day transactions with the grocer, druggist, filling station operator, and all other sellers of merchandise to rely upon the brands which appear upon packages and cartons.

It would appear from the record in this case that bootleggers themselves follow the same custom as Dale

Wolfe was accepting the carton of whisky from the defendant, Griffin, at the very time the officers interfered and stopped the transaction. Wolfe was evidently relying upon the fact that the carton contained the whisky named on the side of the box, and was ready to pay the defendant the agreed price without opening the box to taste the liquids therein contained to see whether it was actually whisky. It would seem an unusual and extremely technical requirement to say that an officer must have evidence stronger than that which a buyer of the liquor would require before he could seize the whisky package. These two men, one an evident wholesaler and the other a retail whisky dealer, were boldly carrying on their illegal traffic on a public street in the city of Tulsa, in broad daylight. It would be placing an unwarranted and strained construction upon the Constitution and the statutes of this state to say that such traffic committed in the presence of the officers of the law should escape prosecution.

The judgment and sentence of the court of common pleas of Tulsa county is affirmed.